## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re:<br><br>CARL L. BLAUWKAMP,<br><br>　　　　　Debtor. | Case No. 14-05130-jwb<br><br>Chapter 7<br><br>Honorable James W. Boyd |
| HIGHPOINT ELECTRIC, INC.<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CARL L. BLAUWKAMP,<br><br>　　　　　Defendant. | Adversary Proceeding No. _____ |

### HIGHPOINT ELECTRIC, INC.'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF INDEBTEDNESS UNDER 11 U.S.C. § 523(A)(4)

Plaintiff HighPoint Electric, Inc. ("HighPoint"), by its undersigned counsel, states as follows in support of *HighPoint Electric, Inc.'s Complaint to Determine Dischargeability of Indebtedness Under 11 U.S.C. § 523(a)(4).*

### INTRODUCTION

1.　　Carl L. Blauwkamp ("Debtor") commenced his bankruptcy case by filing a voluntary chapter 7 petition with this Court on July 31, 2014 ("Petition Date").

2.　　Thomas R. Tibble has been appointed as the chapter 7 trustee.

3.　　Plaintiff HighPoint is a Michigan corporation headquartered in Michigan, with offices located at 8113 Belmont Avenue, Belmont Michigan 49306, and 211 12th Street SW, Loveland, Colorado 80537.

4.　　On information and belief, Debtor is an individual who resides at 13 Carousel Lane, Holland, Michigan 49423.

5.　　This adversary proceeding is commenced pursuant to 11 U.S.C. § 523(a)(4).

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and W.D. Mich. LCivR 83.2(a) and (b).

7.      This is a "core" matter pursuant to 28 U.S.C. § 157(b)(2)(I).

8.      Venue is proper pursuant to 28 U.S.C. § 1409.

## GENERAL ALLEGATIONS

9.      Lamar Construction Company ("Lamar") is a Michigan-based national commercial contractor.

10.     Lamar engaged HighPoint as a subcontractor to provide electrical services for Lamar on a number of projects.

11.     As of the Petition Date, Lamar owed HighPoint over $1.3 million for various services rendered.

12.     Debtor is an insider within the meaning of 11 U.S.C. § 101(31) of Lamar because, on information and belief, (1) Debtor is Lamar's President and Treasurer, (2) Debtor serves as a Director of Lamar, and (3) Debtor owns shares of stock in Lamar.

13.     Lamar engaged HighPoint to provide electrical services for specific construction projects commonly known as Creek Side Apartments, Harbor Village, Fernelius Chevrolet, Challenge Plant 3 and Challenge P2, Bay Harbor Yacht Club, E&W/BMW Okemos, and II Stanley (the "Projects").

14.     Lamar agreed to pay HighPoint for its services for Lamar on the Projects in a timely manner and in compliance with applicable laws.

15.     M.C.L. § 570.151 provides that

> In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or

subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

16.     M.C.L. § 570.152 provides that

Any contractor or subcontractor engaged in the building construction business, who, with intent to defraud, shall retain or use the proceeds or any part therefor, of any payment made to him, for any other purpose than to first pay laborers, subcontractors and materialmen, engaged by him to perform labor or furnish material for the specific improvement, shall be guilty of a felony in appropriating such funds to his own use while any amount for which he may be liable or become liable under the terms of his contract for such labor or material remains unpaid, and may be prosecuted upon the complaint of any persons so defrauded, and, upon conviction, shall be punished by a fine of not less than 100 dollars or more than 5,000 dollars and/or not less than 6 months nor more than 3 years imprisonment in a state prison at the discretion of the court.

17.     MCL § 570.151 required Lamar to hold any funds it received in payment for each and every Project in trust for the purpose of first paying amounts Lamar owed at the time of receipt to the contractors, laborers, subcontractors such as HighPoint, and materialmen Lamar had engaged for that Project.

18.     MCL § 570.151 makes Lamar a trustee for funds received in payment for the Projects.

19.     MCL §§ 570.151 and 152 taken together, along with Debtor's role as an officer and director of Lamar, meant that Debtor is a "contractor" for purposes of MCL §§ 570.151 and 152. *Patel v. Shamrock Floorcovering Servs. (In re Patel)*, 565 F.3d 963, 968-70 (6th Cir. 2009).

20.     In light of Debtor's role as an officer and director of Lamar, MCL §§ 570.151 and 152 imposed a fiduciary duty on Debtor to ensure that Lamar paid its subcontractors from the funds it received.  *Id.*

21.    Debtor is thus liable to its subcontractors to the extent Lamar misused funds and failed to pay its subcontractors in accordance with MCL §§ 570.151 and 152.

22.    Upon information and belief, Lamar received payment for its work (and the work completed by HighPoint) on each Project by the owners and general contractors of the respective Project.

23.    Despite being paid on the Projects, Lamar has not paid HighPoint in full for its services as a subcontractor for Lamar on the Projects for the amounts due and owing to HighPoint when Lamar received each payment on each Project.

24.    Lamar therefore unjustly retained funds held in trust for HighPoint on each of the Projects.

25.    Lamar applied the funds it unjustly retained for purposes other than paying HighPoint the amounts due and owing to HighPoint at the time Lamar received payments from the owners and general contractors of the Projects.

26.    Debtor is liable to HighPoint for the amounts that it caused Lamar to unjustly retain from HighPoint.  *Patel*, 565 F.3d at 968-70.

27.    HighPoint has been able to negotiate settlements with some of the owners and general contractors of the Projects, but as of the date of this complaint, has still been damaged by Debtor's actions.

28.    Debtor's actions in violation of MCL §§ 570.151 and 152 constitute fraud or defalcation while acting in a fiduciary capacity, as defined in 11 U.S.C. § 523(a)(4).

## COUNT I – CREEK SIDE APARTMENTS
## <u>FRAUD OR DEFALCATION WHILE ACTING IN A FIDUCIARY CAPACITY</u>

29.    HighPoint realleges the allegations in paragraphs 1 through 28.

30.     HighPoint provided electrical services to Lamar as a subcontractor on the construction project known as Creek Side Apartments located in Franklin County, Ohio.

31.     Debtor was a contractor on the Creek Side Apartments project for purposes of MCL §§ 570.151 and 152.  *Patel*, 565 F.3d at 968-70.

32.     HighPoint filed applications with Lamar for payment for the services it provided for Lamar on the Creek Side Apartments project.

33.     Lamar received payments from the owners or general contractors of Creek Side Apartments.

34.     HighPoint has not been paid in full on the applications that it had filed with Lamar prior to the time that Lamar received payments from the owners or general contractors of Creek Side Apartments.

35.     Debtor had a fiduciary duty to Lamar's subcontractors such as HighPoint to ensure that subcontractors were paid first with the funds Lamar received from the owners or general contractors of Creek Side Apartments.

36.     Debtor's breach of its fiduciary duty to HighPoint renders Debtor liable for the damages caused by such breach.

37.     HighPoint incurred damages of no less than $20,925.57 as a result of Debtor's breach of its fiduciary duty to HighPoint.

38.     Debtor's breach of its fiduciary duty to HighPoint renders the Debtor's debt of $20,925.57 to HighPoint nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, HighPoint requests that the Court (1) enter a money judgment in its favor against Debtor in the amount of $20,925.57, plus all allowable costs, interest, and attorneys'

fees; and (2) enter judgment that the amount awarded is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

## COUNT II – HARBOR VILLAGE
## FRAUD OR DEFALCATION WHILE ACTING IN A FIDUCIARY CAPACITY

39.     HighPoint realleges the allegations in paragraphs 1 through 28.

40.     HighPoint provided electrical services to Lamar as a subcontractor on the construction project known as Harbor Village located in Berrien County, Michigan.

41.     Debtor was a contractor on the Harbor Village project for purposes of MCL §§ 570.151 and 152.  *Patel*, 565 F.3d at 968-70.

42.     HighPoint filed applications with Lamar for payment for the services it provided for Lamar on the Harbor Village project.

43.     Lamar received payments from the owners or general contractors of Harbor Village.

44.     HighPoint has not been paid in full on the applications that it had filed with Lamar prior to the time that Lamar received payments from the owners or general contractors of Harbor Village.

45.     Debtor had a fiduciary duty to Lamar's subcontractors such as HighPoint to ensure that subcontractors were paid first with the funds Lamar received from the owners or general contractors of Harbor Village.

46.     Debtor's breach of its fiduciary duty to HighPoint renders Debtor liable for the damages caused by such breach.

47.     HighPoint incurred damages of no less than $700,454.51 as a result of Debtor's breach of its fiduciary duty to HighPoint.

48. Debtor's breach of its fiduciary duty to HighPoint renders the Debtor's debt of $700,454.51 to HighPoint nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, HighPoint requests that the Court (1) enter a money judgment in its favor against Debtor in the amount of $700,454.51, plus all allowable costs, interest, and attorneys' fees; and (2) enter judgment that the amount awarded is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

## COUNT III – FERNELIUS CHEVROLET
## FRAUD OR DEFALCATION WHILE ACTING IN A FIDUCIARY CAPACITY

49. HighPoint realleges the allegations in paragraphs 1 through 28.

50. HighPoint provided electrical services to Lamar as a subcontractor on the construction project known as Fernelius Chevrolet located in Ogemaw County, Michigan.

51. Debtor was a contractor on the Fernelius Chevrolet project for purposes of MCL §§ 570.151 and 152. *Patel*, 565 F.3d at 968-70.

52. HighPoint filed applications with Lamar for payment for the services it provided for Lamar on the Fernelius Chevrolet project.

53. Lamar received payments from the owners or general contractors of Fernelius Chevrolet.

54. HighPoint has not been paid in full on the applications that it had filed with Lamar prior to the time that Lamar received payments from the owners or general contractors of Fernelius Chevrolet.

55. Debtor had a fiduciary duty to Lamar's subcontractors such as HighPoint to ensure that subcontractors were paid first with the funds Lamar received from the owners or general contractors of Fernelius Chevrolet.

56.    Debtor's breach of its fiduciary duty to HighPoint renders Debtor liable for the damages caused by such breach.

57.    HighPoint incurred damages of no less than $6,142.50 as a result of Debtor's breach of its fiduciary duty to HighPoint.

58.    Debtor's breach of its fiduciary duty to HighPoint renders the Debtor's debt of $6,142.50 to HighPoint nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, HighPoint requests that the Court (1) enter a money judgment in its favor against Debtor in the amount of $6,142.50, plus all allowable costs, interest, and attorneys' fees; and (2) enter judgment that the amount awarded is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

**COUNT IV – CHALLENGER PLANT 3**
**FRAUD OR DEFALCATION WHILE ACTING IN A FIDUCIARY CAPACITY**

59.    HighPoint realleges the allegations in paragraphs 1 through 28.

60.    HighPoint provided electrical services to Lamar as a subcontractor on the construction project known as Challenger Plant 3 located in Kent County, Michigan.

61.    Debtor was a contractor on the Challenger Plant 3 project for purposes of MCL §§ 570.151 and 152. *Patel*, 565 F.3d at 968-70.

62.    HighPoint filed applications with Lamar for payment for the services it provided for Lamar on the Challenger Plant 3 project.

63.    Lamar received payments from the owners or general contractors of Challenger Plant 3.

64.    HighPoint has not been paid in full on the applications that it had filed with Lamar prior to the time that Lamar received payments from the owners or general contractors of Challenger Plant 3.

65.     Debtor had a fiduciary duty to Lamar's subcontractors such as HighPoint to ensure that subcontractors were paid first with the funds Lamar received from the owners or general contractors of Challenger Plant 3.

66.     Debtor's breach of its fiduciary duty to HighPoint renders Debtor liable for the damages caused by such breach.

67.     HighPoint incurred damages of no less than $51,731.56 as a result of Debtor's breach of its fiduciary duty to HighPoint.

68.     Debtor's breach of its fiduciary duty to HighPoint renders the Debtor's debt of $51,731.56 to HighPoint nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, HighPoint requests that the Court (1) enter a money judgment in its favor against Debtor in the amount of $51,731.56, plus all allowable costs, interest, and attorneys' fees; and (2) enter judgment that the amount awarded is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

## COUNT V – CHALLENGER PLANT 2
## <u>FRAUD OR DEFALCATION WHILE ACTING IN A FIDUCIARY CAPACITY</u>

69.     HighPoint realleges the allegations in paragraphs 1 through 28.

70.     HighPoint provided electrical services to Lamar as a subcontractor on the construction project known as Challenger Plant 2 located in Kent County, Michigan.

71.     Debtor was a contractor on the Challenger Plant 2 project for purposes of MCL §§ 570.151 and 152.  *Patel*, 565 F.3d at 968-70.

72.     HighPoint filed applications with Lamar for payment for the services it provided for Lamar on the Challenger Plant 2 project.

73.     Lamar received payments from the owners or general contractors of Challenger Plant 2.

74.     HighPoint has not been paid in full on the applications that it had filed with Lamar prior to the time that Lamar received payments from the owners or general contractors of Challenger Plant 2.

75.     Debtor had a fiduciary duty to Lamar's subcontractors such as HighPoint to ensure that subcontractors were paid first with the funds Lamar received from the owners or general contractors of Challenger Plant 2.

76.     Debtor's breach of its fiduciary duty to HighPoint renders Debtor liable for the damages caused by such breach.

77.     HighPoint incurred damages of no less than $3,631.36 as a result of Debtor's breach of its fiduciary duty to HighPoint.

78.     Debtor's breach of its fiduciary duty to HighPoint renders the Debtor's debt of $3,631.36 to HighPoint nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, HighPoint requests that the Court (1) enter a money judgment in its favor against Debtor in the amount of $3,631.36, plus all allowable costs, interest, and attorneys' fees; and (2) enter judgment that the amount awarded is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

## COUNT VI – BAY HARBOR YACHT CLUB
## FRAUD OR DEFALCATION WHILE ACTING IN A FIDUCIARY CAPACITY

79.     HighPoint realleges the allegations in paragraphs 1 through 28.

80.     HighPoint provided electrical services to Lamar as a subcontractor on the construction project known as Bay Harbor Yacht Club located in Emmet County, Michigan.

81.     Debtor was a contractor on the Bay Harbor Yacht Club project for purposes of MCL §§ 570.151 and 152.  *Patel*, 565 F.3d at 968-70.

82.     HighPoint filed applications with Lamar for payment for the services it provided for Lamar on the Bay Harbor Yacht Club project.

83.     Lamar received payments from the owners or general contractors of Bay Harbor Yacht Club.

84.     HighPoint has not been paid in full on the applications that it had filed with Lamar prior to the time that Lamar received payments from the owners or general contractors of Bay Harbor Yacht Club.

85.     Debtor had a fiduciary duty to Lamar's subcontractors such as HighPoint to ensure that subcontractors were paid first with the funds Lamar received from the owners or general contractors of Bay Harbor Yacht Club.

86.     Debtor's breach of its fiduciary duty to HighPoint renders Debtor liable for the damages caused by such breach.

87.     HighPoint incurred damages of no less than $33,513.75 as a result of Debtor's breach of its fiduciary duty to HighPoint.

88.     Debtor's breach of its fiduciary duty to HighPoint renders the Debtor's debt of $33,513.75 to HighPoint nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, HighPoint requests that the Court (1) enter a money judgment in its favor against Debtor in the amount of $33,513.75, plus all allowable costs, interest, and attorneys' fees; and (2) enter judgment that the amount awarded is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

## COUNT VII – E&W/BMW OKEMOS
## FRAUD OR DEFALCATION WHILE ACTING IN A FIDUCIARY CAPACITY

89.     HighPoint realleges the allegations in paragraphs 1 through 28.

90.    HighPoint provided electrical services to Lamar as a subcontractor on the construction project known as E&W/BMW Okemos located in Ingham County, Michigan.

91.    Debtor was a contractor on the E&W/BMW Okemos project for purposes of MCL §§ 570.151 and 152.  *Patel*, 565 F.3d at 968-70.

92.    HighPoint filed applications with Lamar for payment for the services it provided for Lamar on the E&W/BMW Okemos project.

93.    Lamar received payments from the owners or general contractors of E&W/BMW Okemos.

94.    HighPoint has not been paid in full on the applications that it had filed with Lamar prior to the time that Lamar received payments from the owners or general contractors of E&W/BMW Okemos.

95.    Debtor had a fiduciary duty to Lamar's subcontractors such as HighPoint to ensure that subcontractors were paid first with the funds Lamar received from the owners or general contractors of E&W/BMW Okemos.

96.    Debtor's breach of its fiduciary duty to HighPoint renders Debtor liable for the damages caused by such breach.

97.    HighPoint incurred damages of no less than $8,975.00 as a result of Debtor's breach of its fiduciary duty to HighPoint.

98.    Debtor's breach of its fiduciary duty to HighPoint renders the Debtor's debt of $8,975.00 to HighPoint nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, HighPoint requests that the Court (1) enter a money judgment in its favor against Debtor in the amount of $8,975.00, plus all allowable costs, interest, and attorneys' fees;

and (2) enter judgment that the amount awarded is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

## COUNT VIII – II STANLEY
## FRAUD OR DEFALCATION WHILE ACTING IN A FIDUCIARY CAPACITY

99.    HighPoint realleges the allegations in paragraphs 1 through 28.

100.    HighPoint provided electrical services to Lamar as a subcontractor on the construction project known as II Stanley located in Calhoun County, Michigan.

101.    Debtor was a contractor on the II Stanley project for purposes of MCL §§ 570.151 and 152.  *Patel*, 565 F.3d at 968-70.

102.    HighPoint filed applications with Lamar for payment for the services it provided for Lamar on the II Stanley project.

103.    Lamar received payments from the owners or general contractors of II Stanley.

104.    HighPoint has not been paid in full on the applications that it had filed with Lamar prior to the time that Lamar received payments from the owners or general contractors of II Stanley.

105.    Debtor had a fiduciary duty to Lamar's subcontractors such as HighPoint to ensure that subcontractors were paid first with the funds Lamar received from the owners or general contractors of II Stanley.

106.    Debtor's breach of its fiduciary duty to HighPoint renders Debtor liable for the damages caused by such breach.

107.    HighPoint incurred damages of no less than $16,875.00 as a result of Debtor's breach of its fiduciary duty to HighPoint.

108.    Debtor's breach of its fiduciary duty to HighPoint renders the Debtor's debt of $16,875.00 to HighPoint nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, HighPoint requests that the Court (1) enter a money judgment in its favor against Debtor in the amount of $16,875.00, plus all allowable costs, interest, and attorneys' fees; and (2) enter judgment that the amount awarded is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: ___/s/ Eric D. Carlson_____
        Eric D. Carlson (P60277)
        Ronald A. Spinner (P73198)
        Attorneys for Creditor HighPoint Electric, Inc.
        99 Monroe Avenue NW
        Suite 1200
        Grand Rapids, Michigan 49503
        (616)776-6355
        carlson@millercanfield.com

Dated:  November 20, 2014